**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUMENATE TECHNOLOGIES, LP, a Texas Limited Partnership, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13 C 3767 |
| INTEGRATED DATA STORAGE, LLC, a Limited Liability Company, JEFF PARCHOMENKO, MICHELANGELO SCALERA, and STEVEN SPREHE, | ) ) ) ) ) | Judge Amy St. Eve |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

On July 16, 2013, Plaintiff Lumenate Technologies, LP ("Lumenate") filed a five-count First Amended Complaint (the "Complaint") against Defendants Integrated Data Storage, LLC ("IDS"), Jeff Parchomenko, Michelangelo Scalera, and Steven Sprehe based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, in the alternative, for a more definite statement pursuant to Rule 12(e). (R. 23.) For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss and denies Defendants' motion for a more definite statement.

## BACKGROUND

Lumenate alleges the following facts, which the Court assumes as true for purposes of this motion to dismiss.

## I.        The Parties

Plaintiff Lumenate is a technical consulting firm that provides integrated technology solutions for large and mid-market businesses.  (R. 16, Compl. ¶ 1.)  All but one of Lumenate's limited partners and all members of Lumenate's general partner, Lumenate, L.L.C. are citizens of Texas.  (*Id.* ¶ 5.)  Lumenate's remaining limited partner is a citizen of Massachusetts.  (*Id.* ¶ 5(f).)  Lumenate, therefore, is a citizen of Texas and Massachusetts for purposes of diversity jurisdiction.  *See Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d 580, 582 (7th Cir. 2003).

On or around April 2, 2013, Lumenate acquired the assets of Augmentity Systems, Inc. ("Augmentity"), a company that offered a variety of technical services to its clients.  (Compl. ¶¶ 1, 4.)  As a result of Lumenate's acquisition, it now owns Augmentity's confidential information and trade secrets and any claims Augmentity may have had against third parties as of April 2, 2013.  (*Id.* ¶ 4.)  Augmentity has since ceased operations.  (*Id.*)  Lumenate now services Augmentity's business and contracts in place as of April 2, 2013.  (*Id.*)

Defendant IDS is a direct competitor of Lumenate and former competitor of Augmentity. (*Id.* ¶ 2.)  IDS is a limited liability company created under Illinois law with its principal place of business in Cook County, Illinois.  (*Id.* ¶ 6.)  The membership of IDS is not a matter of public information, but Lumenate alleges on information and belief—and IDS does not contest—that none of IDS's members are citizens of Texas or Massachusetts.  (*Id.*)

The remaining Defendants—Jeff Parchomenko, Michelangelo Scalera, and Steven Sprehe (collectively, the "Individual Defendants")—are former employees of Augmentity.  (*Id.* ¶¶ 7-9.)  The Individual Defendants left Augmentity in October or November 2012 and began working for IDS shortly thereafter.  (*Id.* ¶¶ 7-9, 18.)  They are citizens of Illinois for purposes of diversity jurisdiction.  (*Id.* ¶¶ 7-9.)

## II.     Augmentity's Confidential Information

During their employment with Augmentity, the Individual Defendants had access to Augmentity's confidential proprietary business information, including Augmentity's client lists and other client-related information, pricing information, contracts and arrangements with original equipment manufacturers ("OEMs"), and financial data.  (*Id.* ¶ 21.)  The Individual Defendants each signed a non-disclosure agreement when Augmentity hired them.[1]  (*Id.* ¶ 25.) As part of the non-disclosure agreements, the Individual Defendants agreed not to use, disclose, or divulge Augmentity's confidential information.  (*Id.*)

Augmentity took additional measures to protect its confidential information and trade secrets.  (*Id.* ¶¶ 26-27, 60.)  Its employee handbook, which the Individual Defendants received and acknowledged reading, contains a "Confidentiality" policy to protect Augmentity's confidential information and trade secrets.  (*Id.*)  Augmentity also password protected its confidential information, imposed user-level access restrictions on that information, and watermarked or otherwise labeled documents containing confidential information as "Confidential."  (*Id.* ¶ 60.)  Lumenate has continued to take measures to protect this confidential information since purchasing Augmentity's assets.  (*Id.* ¶ 23.)

## III.    The Individual Defendants Leave Augmentity for IDS

In July or August 2012, IDS hired Vincent Buscareno, a former employee of Augmentity. (*Id.* ¶¶ 15, 31.)  Around this same time, while they still worked for Augmentity, the Individual Defendants began taking steps toward joining IDS.  (*Id.* ¶ 32.)  Cellular phone records show frequent phone calls and text messages between Buscareno, on the one hand, and Scalera or

---

[1] Augmentity assigned the non-disclosure agreements to Lumenate as part of Lumenate's purchase of Augmentity's assets.  (*Id.* ¶ 29.)

Sprehe, on the other.[2]  (*Id.* ¶ 33.)  In addition, Parchomenko engaged in a "work slowdown" in which his monthly sales revenues fell nearly 90% from his first quarter revenues.  (*Id.* ¶ 37.) Augmentity's management also began hearing from clients and OEMs that Parchomenko was disparaging the company and suggesting that it faced financial troubles.  (*Id.* ¶ 34.)

Scalera resigned from Augmentity on Friday, October 26, 2012.  (*Id.* ¶ 36.)  Augmentity terminated Parchomenko that same day, suspecting that he planned to leave with Scalera.  (*Id.*) Sprehe resigned from Augmentity about two weeks later.  (*Id.*)  Each took the same position at IDS that he previously held at Augmentity.  (*Id.* ¶ 18.)

Lumenate alleges, on information and belief, that the Individual Defendants used Augmentity's confidential information to unfairly compete for business from several of long-standing Augmentity's clients, including DeVry, Inc., Morningstar, Grant Thornton, and Sears. (*Id.* ¶ 39.)  DeVry, Morningstar, and Grant Thornton subsequently ceased doing business with Augmentity (or Lumenate), and Sears greatly reduced its business with Augmentity.  (*Id.* ¶ 40.)

Augmentity forensically examined Parchomenko's and Sprehe's work computers after they left the company.  (*Id.* ¶¶ 42-51.)  Through this analysis, Augmentity discovered evidence showing that Parchomenko and Sprehe had saved files to external drives and databases.  (*Id.* ¶¶ 48-50.)  Lumenate alleges, on information and belief, that they downloaded Augmentity's confidential information onto these external drives and databases.  (*Id.* ¶ 51.)  The forensic analysis also revealed that Parchomenko's and Sprehe's computers were "unusually 'clean,'" suggesting that they had taken steps to "cover their digital tracks."  (*Id.* ¶¶ 43-43.)  Parchomenko and Sprehe allegedly used a "virtual machine" program to operate their computers, and then

---

[2] Parchomenko used his personal cell phone, rather than his company-issued cell phone, to conduct business.  (*Id.* ¶ 34.)  As a result, Lumenate does not know the extent of communication between Buscareno and Parchomenko.  (*Id.*)

removed the program before returning their computers to Augmentity to prevent it from discovering their activities. (*Id.* ¶¶ 45-47.)

## IV.    Procedural History

On May 21, 2013, Augmentity filed this lawsuit against IDS and the Individual Defendants. (R. 1.) Lumenate filed an amended complaint on July 16, 2013, replacing Augmentity as plaintiff. (R. 16.) In the operative Complaint, Lumenate asserts the following five counts: breach of contract (Count I) and breach of fiduciary duty (Count III) against the Individual Defendants, tortious interference with the Individual Defendants' non-disclosure agreements against IDS (Count V), and violation of the Illinois Trade Secrets Act (Count II) and tortious interference with prospective business expectancies (Count IV) against all Defendants. (R. 16, Compl.) Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) or, in the alternative, for a more definite statement pursuant to Rule 12(e). (R. 23, Mot.)

**LEGAL STANDARD**

## I.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct.

1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the

sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as

true all well-pleaded factual allegations and making all possible inferences from the allegations

in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

## II.     Federal Rule of Civil Procedure 12(e)

Under Rule 12(e), a party may move for a more definite statement of a pleading that is

"so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P.

12(e). The rule "is designed to strike at unintelligibility rather than want of detail." *Gardunio v.*

*Town of Cicero,* 674 F. Supp. 2d 976, 992 (N.D. Ill. 2009). "Motions under Rule 12(e) are

disfavored generally, and courts should grant [them] only if the complaint is so unintelligible that

the defendant cannot draft [a] responsive pleading." *See Rivera v. Lake County,* --- F. Supp.

2d ---, 2013 WL 5408840, at *11 (N.D. Ill. Sept. 26, 2013) (citing *Moore v. Fidelity Fin. Servs.,*

*Inc.,* 869 F. Supp. 557, 559-60 (N.D. Ill. 1994)). "Rule 12(e) motions are not to be used as

substitutions for discovery." *Moore,* 869 F. Supp. at 559 (citations omitted).

## ANALYSIS

## I.     Defendants' Motion to Dismiss

Defendants move to dismiss each of the five counts Lumenate asserts pursuant to Rule

12(b)(6). The Court considers each count in turn to determine whether it states a valid claim for

relief.

### A.     Violation of the Illinois Trade Secrets Act (Count II)

Count II alleges trade secret misappropriation in violation of the Illinois Trade Secrets

Act ("ITSA"), 765 ILCS 1065/1 *et seq.* To state a valid ITSA claim, a plaintiff must allege

(1) the existence of a trade secret, (2) misappropriation of that trade secret through improper acquisition, disclosure, or use, and (3) resultant damages. *Liebert Corp. v. Mazur,* 357 Ill. App. 3d 265, 281, 293 Ill. Dec. 28, 827 N.E.2d 909 (Ill. App. Ct. 2005); *see also PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1268 (7th Cir. 1995) ("A party seeking an injunction [under the ITSA] must . . . prove both the existence of a trade secret and misappropriation."). The ITSA defines a trade secret as information that "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d). Examples of trade secrets may include "customer lists that are not readily ascertainable; pricing, distribution and marketing plans; and sales data and market analysis information." *Mintel Int'l Grp. Ltd. v. Neerghdeen,* No. 08-cv-3939, 2010 WL 145786, at *11 (N.D. Ill. Jan. 12, 2010) (citations omitted).

Defendants contend that Lumenate fails to plead two elements of its ITSA claim. First, Defendants argue that Lumenate does not sufficiently allege the existence of a trade secret because the Complaint fails to identify actions Lumenate took to maintain the secrecy of the information at issue. (*See* Def. Mem. at 9; Def. Reply at 8-10.) Second, Defendants argue that Lumenate fails to plead actual or threatened misappropriation of its alleged trade secrets. (*See* Def. Mem. at 5-8; Def. Reply at 4-8.)

### 1. Lumenate Sufficiently Alleges that It Maintained the Secrecy of Its Trade Secrets

To plead the existence of a trade secret, a plaintiff must allege, among other things, facts that show it took reasonable efforts to maintain the secrecy of the information at issue. 765 ILCS 1065/2(d)(2); *see Magellan Int'l Corp. v. Salzgitter Handel GmbH,* 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999) (dismissing trade secret claim in part because the complaint "sa[id] nothing at all

about what [the plaintiff] assertedly did to assure the confidentiality of its alleged trade secrets"). Although Defendants admit that the Complaint adequately sets out affirmative measures that *Augmentity* took to protect the secrecy of its alleged trade secrets, they contend that Lumenate's claims fail because the Complaint does not state that *Lumenate* itself continued those measures after it purchased Augmentity. (*See* Def. Mem. at 9; Def. Reply at 8-10.) The Court rejects Defendants' argument, which relies on too narrow a reading of the Complaint.

Paragraph 23 of the Complaint alleges that "Augmentity took reasonable means under the circumstances to safeguard the secrecy of the Confidential Information, *and Lumenate continues to do so.*" (Compl. ¶ 23 (emphasis added).) The Complaint later describes those "reasonable means" in paragraph 60. Specifically, the Complaint alleges that Augmentity required the Individual Defendants and vendors with access to confidential information to enter non-disclosure agreements, advised its employees of the importance of maintaining the confidentiality of its information through the "Confidentiality" policy in the employee handbook, watermarked or otherwise labeled documents containing confidential information as "Confidential," required a password to access confidential information electronically, and installed user-level access restrictions on its confidential information. (*Id.* ¶ 60(a)-(m).) Although paragraph 60 itself does not specifically state that Lumenate continued these measures after purchasing Augmentity, the earlier allegation in paragraph 23 ties the laundry list of confidentiality measures Augmentity took to Lumenate. Therefore, the Complaint, when read as a whole and viewed in the light most favorable to Lumenate, sufficiently alleges that both Augmentity and Lumenate maintained the secrecy of the trade secret information at issue. *See, e.g., Mintel Int'l Grp.,* 2010 WL 145786, at *11 (finding that evidence that the plaintiff required its employees to sign non-disclosure agreements and installed security measures to limit access

to its confidential information to those employees who needed it to perform their job duties sufficiently showed that the plaintiff took reasonable steps to safeguard its confidential information); *RKI, Inc. v. Grimes.,* 177 F. Supp. 2d, 859, 874-75 (N.D. Ill. 2001) (determining that the plaintiff had taken reasonable measures to safeguard its trade secrets by providing access to that information only on a "need-to-know" basis, password-protecting its computer databases, and requiring employees to sign non-disclosure agreements and acknowledge receipt of an employee handbook containing its non-disclosure policies).

### 2. Lumenate Sufficiently Alleges Misappropriation of Its Trade Secrets

Misappropriation of trade secrets occurs one of three ways: by improper acquisition, unauthorized disclosure, or unauthorized use. 765 ILCS 1065/2(b); *Liebert Corp.,* 357 Ill. App. 3d at 281. Misappropriation by improper acquisition includes acquisition by "theft, bribery, misrepresentation, breach or inducement of a breach of confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." 765 ILCS 1065/2(a). Misappropriation by unauthorized disclosure or use occurs when a defendant uses the alleged trade secrets or discloses them to others "for purposes other than serving the interests of" the owner of that information. *See Mintel Int'l Grp.,* 2010 WL 145786, at *12 (citing *RKI, Inc.,* 177 F. Supp. 2d at 875).

Under the ITSA, a court may enjoin threatened misappropriation as well as actual misappropriation. 765 ILCS 1065/3(a); *PepsiCo,* 54 F.3d at 1268 ("[T]he ITSA plainly permits a court to enjoin the threat of misappropriation of trade secrets . . . ."). Under the theory of inevitable disclosure, "a plaintiff may prove a claim of [threatened] trade secret misappropriation by demonstrating that the defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *PepsiCo,* 54 F.3d at 1269.

Contrary to Defendants' contentions, Lumenate sufficiently alleges both actual and threatened misappropriation of its trade secrets. With respect to actual misappropriation, Lumenate alleges that the Individual Defendants had access to Augmentity's trade secrets during their employment with the company (Compl. ¶¶ 21-25); they left Augmentity in October and November 2012 to join a direct competitor (*id.* ¶¶ 18, 32-37); before leaving, they downloaded Augmentity's files to external drives and databases (*id.* ¶¶ 48-51); they took steps to conceal what they had done before returning their work computers to Augmentity (*id.* ¶¶ 42-47); since they left the company, Augmentity lost several long-standing clients to the Individual Defendants' new employer, IDS, but successfully retained clients who had not worked with the Individual Defendants during their employment with Augmentity (*id.* ¶¶ 39-41). In sum, Lumenate alleges that the Individual Defendants suspiciously downloaded the company's confidential information before leaving to join a direct competitor, "covered their tracks" to prevent Augmentity from discovering what they had done, and then used that information to poach Augmentity's clients.

Defendants argue that these allegations fail to support Lumenate's allegation "on information and belief" that Defendants misappropriated its trade secret information. (Def. Mem. at 6-8.) According to Defendants, the Complaint merely cites "routine business practices," recasts them as "suspicious and nefarious" and then leaps to an unwarranted conclusion that "'on information and belief,' Defendants must have misappropriated something." (Def. Mem. at 6.) The Court disagrees. Although, as a result of the Individual Defendants' own actions, Lumenate cannot state exactly what information they downloaded before leaving Augmentity, Lumenate alleges sufficient facts regarding the suspicious circumstances of the Individual Defendants' downloads to raise its right to relief above the speculative level and,

therefore, survive a motion to dismiss. *See Twombly,* 550 U.S. at 555. Defendants will have opportunities at later stages in the litigation to elicit any evidence that contradicts the "nefarious" inferences Lumenate has drawn.

Courts, moreover, have repeatedly recognized that plaintiffs in trade secret cases can rarely prove misappropriation by convincing direct evidence. *See PepsiCo, Inc. v. Redmond,* No. 94 C 6838, 1996 WL 3965, at *15 (N.D. Ill. Jan 2, 1996). "In most cases, plaintiffs . . . must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege did in fact take place." *Id.* (quoting *Si Handling Sys., Inc. v. Heisley,* 753 F.2d 1244, 1261 (3d Cir. 1985)); *see also RKI, Inc.,* 177 F. Supp. 2d at 876 ("Because direct evidence of theft and use of trade secrets is often not available, the plaintiff can rely on circumstantial evidence to prove misappropriation by drawing inferences from perhaps ambiguous circumstantial evidence."). Courts often consider a defendant's suspicious downloading of company information before his departure and attempts to "cover his tracks" in determining whether the defendant misappropriated trade secrets. *See, e.g., RKI, Inc.,* 177 F. Supp. 2d at 866-68, 875 (determining that the defendant had misappropriated his employer's trade secrets based in part on evidence that the defendant downloaded 60 megabytes of the company's data to his home computer two days before resigning and then suspiciously deleted the information and defragmented his computer four times in a ten-day period to prevent the plaintiff from discovering his actions); *Liebert Corp.,* 357 Ill. App. at 282, 293 Ill. Dec. 28, 827 N.E.2d 909 ("The fact that Mazur attempted to destroy any indication of his downloading activities when plaintiffs filed suit also suggests improper acquisition."). A plaintiff's reliance on allegations of suspicious circumstances to plead misappropriation, therefore, does not, by itself, doom the plaintiff's ITSA

claim, as long as the allegations satisfy the requirements in *Twombly*. Lumenate has satisfied its burden to plead actual misappropriation here.

With respect to threatened misappropriation under the inevitable disclosure theory, Lumenate alleges that the Individual Defendants "cannot help but employ" their knowledge of Lumenate's trade secrets, including client-specific information and Lumenate's strategies in the market, to help IDS target Lumenate's clients and undercut Lumenate's pricing and strategies. (Compl. ¶¶ 65-66.) Defendants attack Lumenate's inevitable disclosure allegations on two grounds. First, because the Individual Defendants never worked for Lumenate (as opposed to Augmentity), Defendants argue that they do not have knowledge of Lumenate's strategies, client information, and other alleged trade secrets. (Def. Mem. at 8; Def. Reply at 7-8.) The Complaint, however, plainly states that Lumenate purchased Augmentity's trade secrets and other assets in April 2013. (Compl. ¶¶ 4, 61.) Although Defendants contend that it is unreasonable for Lumenate to use the same pricing, strategies, and other allegedly protected information as Augmentity (*see* Def. Mem. at 8)—a failed company—this argument raises factual issues that the Court cannot decide at the pleadings stage.

Second, Defendants argue that Lumenate fails to plead sufficient facts to demonstrate a "high probability" that Defendants inevitably will use Lumenate's alleged trade secrets. (Def. Mem. at 8; Def. Reply at 8.) Courts consider three factors in determining whether disclosure of trade secrets is inevitable: "(1) the level of competition between the former employer and the new employer; (2) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer." *Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 734 (N.D. Ill. 2011) (citing *RKI, Inc.*, 177 F.

Supp. 2d at 873). The mere fact that a person holds "general skills and knowledge acquired during his tenure" with his former employer and then "assume[s] a similar position at a competitor" does not, without more, make it "inevitable that he will use or disclose . . . trade secret information" in his new position. *PepsiCo,* 54 F.3d at 1269. Allegations that the new employer assigned the defendant to work on the same projects he had worked on for his previous employer, however, support an inference of inevitable disclosure, *see AutoMed Techs., Inc. v. Eller,* 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001), as do allegations that the defendant downloaded his former employer's trade secret information before leaving the company. *See Saban,* 780 F. Supp. 2d at 734 (N.D. Ill. 2011) (citing *RKI, Inc.,* 177 F. Supp. 2d at 876).

In this case, Augmentity and now Lumenate are direct competitors with IDS. (Compl. ¶¶ 2, 18.) In addition, the Individual Defendants hold the same positions at IDS that they previously held at Augmentity. (*Id.* ¶ 18.) Finally, the allegations in the Complaint suggest that IDS has taken few, if any, precautions to prevent the Individual Defendants from using Augmentity's trade secrets. Lumenate alleges that the Individual Defendants began planning to leave Augmentity to join IDS a couple months before their actual departure; they downloaded confidential information before leaving Augmentity and then attempted to conceal their activities from the company; and after joining IDS, they began poaching Augmentity's clients with whom they had previously worked. (*Id.* ¶¶ 32-51.) These allegations sufficiently support a claim based on inevitable disclosure. *See AutoMed Techs.,* 160 F. Supp. 2d at 921 ("Based on defendants' prior positions with plaintiff, the information to which they had access and the nature of their work for their new employer"—which included working on the same project the defendants had worked on for their former employer—"we can arguably infer use of AutoMed's information."); *see also PepsiCo,* 54 F.3d at 1269 (affirming order granting a preliminary injunction where the

defendant's position with his former employer's competitor made it so that the defendant could not help but rely on his knowledge of his former employee's pricing, distribution and marketing strategies in his new role). The Court, therefore, denies Defendants' motion to dismiss Count II.

**B.** **Breach of Contract (Count I) and Tortious Interference with the Non-Disclosure Agreements (Count V)**

In Count I, Lumenate alleges that the Individual Defendants breached their non-disclosure agreements with Augmentity by actually or inevitably disclosing or using Augmentity's trade secret information to benefit IDS. (Compl. ¶ 54.) In Count V, Lumenate alleges that IDS knowingly and improperly interfered with the Individual Defendants' non-disclosure agreements by using Augmentity's trade secret information to gain an unfair competitive advantage or, alternatively, by knowing that the Individual Defendants would inevitably disclose the trade secret information to benefit IDS. (*Id.* ¶ 81.)

Defendants argue that Counts I and V fail for the same reasons as Count II, namely that Lumenate does not allege sufficient facts to show that the Individual Defendants used, disclosed, or inevitably will disclose Augmentity's confidential information. (*See* Def. Mem. at 9; Def. Reply at 10-11.) Because the Court rejected Defendants' argument with respect to Count II (*see* Part I.A. *supra*), their argument with respect to Counts I and V also fails.

Defendants also argue that the ITSA preempts Count V. (Def. Mem. at 11; Def. Reply at 11-13.) Section 8 of the ITSA preempts "conflicting tort, restitutionary, unfair competition, and other [Illinois] laws . . . providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a). The ITSA does not preempt "contractual remedies, whether or not based upon misappropriation of a trade secret," nor does it preempt common law claims "not based upon misappropriation of a trade secret." 765 ILCS 1065/8(b)(1)-(2). "Accordingly, when considering whether the ITSA preempts a separate claim, a court must determine whether that

separate claim seek[s] recovery for wrongs beyond the mere misappropriation." *Charles Schwab & Co., Inc. v. Carter,* No. 04 C 7071, 2005 WL 2369815, at *4 (N.D. Ill. 2005) (internal quotations and citation omitted); *see also Hecny Transp., Inc. v. Chu,* 430 F.3d 402, 404 (7th Cir. 2005).

In *Hecny Transportation, Inc. v. Chu,* 430 F.3d 402 (7th Cir. 2005), for example, the Seventh Circuit considered whether the ITSA preempted a breach of fiduciary duty claim based on the defendant's taking of the company's customer list, which the company claimed as trade secret information. *Id.* at 403-05. The Seventh Circuit determined that the Illinois Supreme Court would follow the dominant view on preemption under the Uniform Trade Secrets Act of 1985, which is "that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets." *Id.* at 404-05 (collecting cases). Under this view, preemption "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information . . . ." *Id.* at 405. Based on these principles, the Seventh Circuit held that the plaintiff's "assertion of trade secret in [its] customer list [did] not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record." *Id.*

The question before the Court, then, is whether Lumenate's tortious interference claim against IDS would stand even if the information that the Individual Defendants allegedly misappropriated from Augmentity does not constitute trade secrets. *See id.* Put differently, would the Individual Defendants have breached their non-disclosure agreements if the information they allegedly took from Augmentity was not trade secret information? The answer is no. The non-disclosure agreements between the Individual Defendants and Augmentity prohibit the Individual Defendants from using, disclosing, or divulging Augmentity's

"Confidential Information" to any person, entity, or company, except as required in the ordinary course of their duties.  (*See* Compl. at Ex. B-C, § II(a).)  "Confidential Information" is a defined term in the agreement, meaning "information not generally known by Augmentity's competitors or the general public concerning Augmentity and that Augmentity takes reasonable precautions and measures to keep secret . . . ."  (*Id.* at Ex. B-C, § II(b).)  This definition aligns with the definition of a "trade secret" under the ITSA.  *See* 765 ILCS 1065/2(d).  In other words, Lumenate cannot maintain an action against the Individual Defendants for breach of the non-disclosure agreements—and, therefore, cannot maintain an action against IDS for tortious interference with those agreements—unless the information at issue constitutes a trade secret under the ITSA.  The ITSA, therefore, preempts Lumenate's claim for tortious interference against IDS.  *See* 765 ILCS 1065/8(a); *Hecny Transp.,* 430 F.3d at 404-05.

In an attempt to save Count V, Lumenate argues that it is premature to determine whether ITSA preemption applies.  (Pl. Resp. at 14.)  According to Lumenate, only after the fact-finder determines whether the confidential information at issue does, in fact, constitute trade secret information can the Court determine whether the ITSA preempts its claim for tortious interference.  (*Id.*)  The Court disagrees.  If the fact-finder ultimately determines that the confidential information that the Individual Defendants allegedly misappropriated is not trade secret information, the plain terms of the non-disclosure agreements dictate that Lumenate's tortious interference claim would fail alongside its ITSA claim.

Accordingly, the Court denies Defendants' motion to dismiss with respect to Count I but Defendants motion to dismiss with respect to Count V without prejudice.

## C.    Breach of Fiduciary Duty (Count III)

To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach.  *Neade v. Portes,* 193 Ill. 2d 433, 250 Ill. Dec. 733, 749 N.E.2d 496 (Ill. 2000).  Under Illinois law, employees owe a duty of loyalty to their employer.  *Lawlor v. North Am. Corp. of Ill.,* 2012 IL 112530, ¶ 69, 368 Dec. 1, 983 N.E.2d 414 (Ill. 2012); *Beltran v. Brentwood N. Healthcare Ctr., LLC,* 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006).  While employees "may plan, form, and outfit a competing corporation" before leaving a company, they cannot begin competing with their employer or soliciting their employer's clients until after they leave the company.  *Cooper Linse Hallman Capital Mgmt., Inc. v. Hallman,* 368 Ill. App. 3d 353, 357, 395 Ill. Dec. 780, 856 N.E.2d 585 (Ill. App. Ct. 2006); *Lawlor,* 2012 IL 112530, ¶ 69, 368 Dec. 1, 983 N.E.2d 414 ("[A] fiduciary cannot act inconsistently with his agency or trust and cannot solicit his employer's customers for himself.").

Defendants argue that Lumenate fails to allege sufficient facts to plead a breach of the Individual Defendants' fiduciary duties.  (Def. Mem. at 11-12.)  The Court disagrees.  Lumenate alleges that the Individual Defendants plotted their departure from Augmentity a couple of months before actually terminating their employment with Augmentity.  (Compl. ¶ 69.)  While this allegation alone is insufficient to state a claim for breach of fiduciary duty, Lumenate also alleges: (1) Defendant Parchomenko spoke disparagingly about Augmentity to its clients and contractual partners and "engaged in a work slowdown," reducing his monthly sales revenue by nearly 90% (*id.* ¶¶ 35, 37); (2) Defendants Scalera and Parchomenko failed to process a quote for a client, and then brought that client over to IDS with them (*id.* ¶ 38); (3) Defendants Parchomenko and Sprehe downloaded Augmentity's files onto external drives and databases

before leaving the company (*id.* ¶¶ 48-51); and (4) Defendants Parchomenko and Sprehe used a "virtual machine" program, which they subsequently deleted, to conceal their activities from Augmentity (*id.* ¶¶ 42-47). These allegations sufficiently support an inference that the Individual Defendants began competing with Augmentity and soliciting Augmentity's clients on behalf of IDS before terminating their employment with Augmentity. *See Foodcomm Int'l v. Barry,* 328 F.3d 300, 303-04 (7th Cir. 2003) (soliciting business from the employer's customers, failing to inform the employer of fellow employees planning to join a direct competitor, and using the employer's resources to draft and communicate the defendant's own business plan to the employer's customers constitute breaches of fiduciary duty); *see also Beltran,* 426 F. Supp. 2d at 831 (collecting cases); *Hecny Transp.,* 430 F.3d at 404-05 (finding that the defendant's alleged diversion of his employer's files, computers, and software, if proven, would constitute a breach of his fiduciary duties).

Defendants' reliance on *Ellis & Marshall Assocs., Inc. v. Marshall,* 16 Ill. App. 3d 398, 306 N.E.2d 712 (Ill. App. Ct. 1973) (*see* Def. Mem. at 11), is misplaced. To begin, the Complaint does not rely solely on the Individual Defendants' telephone calls with IDS to show their disloyalty during their employment with Augmentity, as the plaintiff in *Ellis & Marshall Assocs.* had. *See id.* at 402. In that case, moreover, the court determined that the defendant's discussions with the plaintiff's employees and clients were merely "statements as to the defendant's future plans," not, as the *Ellis & Marshall Assocs.* plaintiffs suggested, "solicitations of business for himself." *Id.* Here, Lumenate alleges sufficient facts to infer that the Individual Defendants began competing with Augmentity to the benefit of IDS before terminating their employment. Although Defendants offer other benign inferences that the Court may also draw from Lumenate's allegations, the Court must draw all plausible inferences in Lumenate's favor.

Defendants' reliance on *Green v. Rogers,* 234 Ill. 2d 478, 494-95, 334 Ill. Dec. 624, 917 N.E.2d 450 (Ill. 2009) (*see* Def. Mem. at 12), is also misplaced. Lumenate has not alleged a claim for defamation, and thus, it need not comply with pleading requirements for claims of defamation *per se*. Furthermore, *Green v. Rogers* addresses Illinois pleading standards, not federal pleading standards. Even if the Illinois pleading rules require plaintiffs to plead defamation *per se* claims with particularity, the federal notice-pleading rules, which apply to claims brought in federal court, do not. *See Muzikowski v. Paramount Pictures Corp.,* 322 F.3d 918, 925-26 (7th Cir. 2003) ("[The plaintiff's] claim for defamation *per se* does not fall under the special pleading regime of Rule 9, and thus he is entitled to the usual rules for notice pleading established by Rule 8."); *Gehrls v. Gooch,* No. 09 C 6338, 2010 WL 1849400, at *3 (N.D. Ill. May 7, 2010) ("Federal law requires notice pleading of the substance of defamation claims; no heightened pleading standard applies to such claims when brought in federal court." (internal quotations and citation omitted)). Accordingly, the Court denies Defendants' motion to dismiss Count III.

### D. Tortious Interference with a Prospective Business Expectancy (Count IV)

Under Illinois law, the elements of a claim of tortious interference with a prospective business expectancy are "(1) [the plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Botvinick v. Rush Univ. Med. Ctr.,* 574 F.3d 414, 417 (7th Cir. 2009) (alteration in original) (quoting *Fellhauer v. City of Geneva,* 142 Ill. 2d 495, 154 Ill. Dec. 649, 568 N.E.2d 870, 878 (Ill. 1991)). Defendants argue that Count IV fails because Lumenate does not plead a

valid business expectancy by Augmentity or Lumenate.  (*See* Def. Mem. at 13-14; Def. Reply at 13-15.)

In support of Count IV, Lumenate alleges that Augmentity had conducted business with various clients, including DeVry, Inc., Morningstar, Grant Thornton, and Sears, every year for a number of years.  (Compl. ¶ 40.)  Lumenate also alleged that "[a]t all relevant times, Augmentity and Lumenate had a valid and reasonable expectation they would continue to be the recipient of this business from clients."  (*Id.* ¶ 74.)  Indeed, Lumenate, which began servicing Augmentity's clients in April 2013 (*see id.*¶ 4), has successfully retained the business of those clients who had not worked with the Individual Defendants.  (*Id.* ¶ 41.)  DeVry, Morningstar, and Grant Thornton, on the other hand, terminated their business with Augmentity or Lumenate and now do business with IDS.  (*Id.*)  Sears, moreover, significantly reduced the amount of business it directed to Augmentity and Lumenate.  (*Id.*)  In addition, Lumenate alleges that Defendants Scalera and Parchomenko specifically interfered with Augmentity's contract with Grant Thornton by failing to process a maintenance quote as the company had directed them to do shortly before their departure.  (*See id.* ¶ 38.)  These allegations satisfy the federal notice-pleading standards.  *See, e.g., MapQuest, Inc. v. CIVIX-DDI, LLC,* No. 08 C 1732, 2009 WL 383476, at *6 (N.D. Ill. Feb. 11, 2009) (denying motion to dismiss counterclaim where two of the plaintiff's clients had begun to do business with the defendants and, thus, it was not merely speculative that other clients of the plaintiff would also enter agreements with the defendant); *Quantum Foods, LLC v. Progressive Foods, Inc.,* No. 12 C 1329, 2012 WL 5530211, at *2-3 (N.D. Ill. Nov. 14, 2012) (denying motion to dismiss where the plaintiff alleged that it had a "track record" with its clients and certain clients were interested in continuing their business with the plaintiff); *see also Cook v. Winfrey,* 141 F.3d 322, 328 (7th Cir. 1998) (determining that

"[t]he Federal Rules do not require that [the plaintiff's] complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy" (citation omitted)).  The Court, therefore, denies Defendants' motion to dismiss Count IV.

### E.    Request for Injunctive Relief

Defendants argue that even if the Court does not dismiss Counts I and II, the Court should strike Lumenate's requests for injunctive relief in those claims.  (*See* Def. Mem. at 15; Def. Reply at 15.)  With respect to Count II, Defendants argue that Lumenate cannot show that it will suffer irreparable injury based on Defendants' alleged misappropriation of Augmentity's trade secret information six months before Lumenate purchased Augmentity.  (*See* Def. Mem. at 15.)  Defendants contend that "Lumenate was necessarily aware of Augmentity's potential claims against Defendants when it purchased Augmentity's assets . . . . [and] [a]s a matter of law, Lumenate cannot knowingly purchase impaired assets, and then claim to be irreparably harmed by the impaired nature of those assets."  (*Id.*)  Defendants cite no legal support for their argument that Lumenate, as the current owner of Augmentity's trade secrets and assignee of its claims against third-parties, cannot establish that it will suffer irreparable harm from Defendants' alleged misconduct.  The Court, therefore, rejects Defendants' argument with respect to Count II. *See Hess v. Kanoski & Assoc.,* 668 F.3d 446, 455 (7th Cir. 2012) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (citation omitted)).

The Court also rejects Defendants' argument with respect to Count I.  Although Defendants correctly note that Lumenate does not plead that it will suffer irreparable harm in Count I, Lumenate does plead that it "will suffer irreparable injury should the Defendants continue to use the Confidential Information" at issue in Count II.  (Compl. ¶ 61.)  Because

Counts I and II rest on the same alleged misconduct, the Court declines to strike Lumenate's request for injunctive relief in Count I.

## II.        Defendants' Motion for a More Definite Statement

Defendants argue that, at a minimum, the Court should require Lumenate to provide a more definite statement under Rule 12(e) identifying which claims it asserts as a direct plaintiff and which it asserts as an assignee of Augmentity's claims.  (Def. Mem. at 4-5; Def. Reply at 2-4.)  Defendants do not cite any cases in which a court ordered a plaintiff to provide a more definite statement on this basis.  In the principle case on which Defendants rely, *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.,* No. 08 CV 0111, 2008 WL 1883472 (N.D. Ill. Apr. 25, 2008), moreover, the court denied the defendant's motion for a more definite statement, finding that the complaint set forth all the facts and conduct necessary for the defendant to form its responsive pleading and the defendant's motion and reply brief indicated that it was, indeed, fully aware of the what misconduct the plaintiff had alleged.  *Id.* at *5.  Like in *Zaragon,* the allegations in the Complaint here are intelligible and sufficiently put Defendants on notice of Lumenate's claims, regardless of the capacity in which Lumenate brings those claims.  The Court disagrees with Defendants' contention (*see* Def. Reply at 4) that they cannot resolve this ambiguity in the Complaint through discovery.  Defendants may propound interrogatories and other discovery requests to clarify the basis of Lumenate's claims, and they may seek additional clarification by deposing a corporate representative of Lumenate pursuant to Rule 30(b)(6).  The Court, therefore, denies Defendants' motion for a more definite statement under Rule 12(e).

## CONCLUSION

For the reasons stated above, the Court denies in part and grants in part Defendants' motion to dismiss and denies Defendants' motion for a more definite statement.  The Court

dismisses Count V for tortious interference against IDS without prejudice. If Lumenate chooses to replead its tortious interference count, it may file a Second Amended Complaint on or before November 26, 2013.

**DATED: November 11, 2013**                    **ENTERED**

AMY J. ST. EVE
U.S. District Court Judge